FILED
2024 Dec-23  AM 10:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## JASPER DIVISION

| | | |
|---|---|---|
| **APRIL DANIELLE MILES,** | ) | |
| | ) | |
| Plaintiff, | ) | **Civil Action No:** |
| | ) | |
| **v.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **BEVILL STATE COMMUNITY** | ) | |
| **COLLEGE AND STEPHANIE** | ) | |
| **MADDOX,** | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

**COMES NOW**, Plaintiff April Danielle Miles and files this Complaint alleging the following facts, asserting the following causes of action, and seeking to recover the following damages.

### A. Jurisdiction and Venue

1.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343.

2.      Jurisdiction of this Court is also invoked pursuant to 29 U.S.C. §§621-634 (the Age Discrimination in Employment Act, or "ADEA") and 42 U.S.C. § 1983 ("Section 1983"). The Court has supplemental jurisdiction over the state law claims pursuant to breach of contract and Intentional Infliction of Emotional Distress.

3.      The actions complained of in his lawsuit took place in the Northern District of Alabama.

4.      Plaintiff has complied with all applicable exhaustion requirements. She received a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC") dated September 24, 2024. This lawsuit is filed within 90 days of her receipt of that letter.

**B. Parties**

5.      Plaintiff April Danielle Miles ("Dr. Miles" or "Plaintiff") is a white female citizen of the United States and of the State of Alabama. She is and has been at all times relevant to this lawsuit over the age of 40. She is a resident of Marion County.

6.      Defendant Bevill State Community College ("BSCC") is a publicly funded institution of higher learning and operates a community college located in Walker County which is situated in the Northern District of Alabama. Bevill State Community College is a state actor for purposes of Section 1981 and Section 1983 liability.

7.      Defendant Stephanie Maddox is a black female. Dr. Maddox is the Director of Adult Education at Bevill State Community College.

8.      Defendants at all times were acting under color of state law.

## STATEMENT OF RELEVANT FACTS

9.      Dr. Miles is a white woman.  She is employed as an Adult Education

Orientation Coordinator with Bevill State Community College.

10.     Bevill State Community College has systematically discriminated

against Dr. Miles and other job applicants on the basis of age by hiring younger

applicants in their early- to mid-30s who often do not meet the minimum

requirements for the jobs for which they are applying, passing over older

applicants in their 40s and above who do meet those minimum requirements.

11.     On April 26, 2021, Dr. Miles applied for the position of Director of

Adult Education at BSCC.

12.     Dr. Miles was granted an opportunity to interview for the position,

and on two occasions during the interview was referred to by BSCC's president as

"Dr. Maddox" rather than "Dr. Miles."

13.     Dr. Miles was informed later on that same day that she was not going

to be offered the position.

14.     BSCC's hiring committee skipped some of its usual steps in the hiring

process for this position, allowing otherwise unqualified candidates an opportunity

to interview.

15.     BSCC eventually hired Dr. Stephanie Maddox for the position, who

was in her early 30s and did not meet the minimum qualifications for the position.

16.     The Director of Adult Education position was advertised to require, and did require, three years of demonstrated experience supervising full-time employees, two years of successful writing and editing grants and reports, and experience with budget preparation and oversight.

17.     Dr. Maddox did not meet the above qualifications, while Dr. Miles did.

18.     At the time of the job opening, Dr. Miles had been in adult education for almost 20 years with over 10 years of State Adult Education experience and 6 years of National Coalition on Adult Basic Education ("COABE") professional development board experience. Dr. Maddox had two years in adult education and zero State Adult Education or COABE experience.

19.     Dr. Miles has a Ph.D. from Mississippi State University, while Dr. Maddox has only an Ed.D. from an all-online school in California.

20.     BSCC HR at first noted that it was unclear whether Dr. Maddox met the qualifications for the job, but failed to follow up by verifying past employment and other credentials. If BSCC HR had done so, they would have more clearly recognized that Dr. Maddox did not meet the qualifications.

21.     Dr. Miles complained to BSCC about the college bypassing its own requirements and discriminating against Dr. Miles, and on July 8, 2021 was

notified that her complaint had been investigated and all candidates had been treated equally.

22.     Dr. Miles also filed a grievance with the EEOC

23.     Until this point, Dr. Miles had consistently gotten good performance reviews from BSCC.

24.     Dr. Miles was seen and is still seen by other teachers as a good hard worker who is helpful, ethical, and trustworthy.

25.     Dr. Miles has never been written up by a supervisor or had any formal or informal disciplinary actions, and has received no complaints from students or teachers.

26.     Since Dr. Miles complained, BSCC has retaliated against Dr. Miles by changing her schedule with little notice to require her to work on Fridays, after not having worked on Fridays for several years. Dr. Miles was the only employee who had her schedule changed in this way. There was no alternative explanation to this treatment other than retaliation, as Dr. Miles had been completing all of her required hours of work for each week Monday through Thursday and was receiving positive evaluations for her work.

27.     On all occasions, Dr. Miles informed BSCC HR of her complaints at the same time or prior to informing the EEOC.

28.    Dean Al Moore read Dr. Miles's entire complaint directly to Dr. Maddox.

29.    In August and September 2021, Dr. Maddox and Terri Johnson (one of the other adult education coordinators along with Dr. Miles) mistreated and harassed another member of the department to the point that she resigned.

30.    In June of 2022, Dr. Miles was bypassed for the opportunity to lead Adult Education Graduation, with the opportunity being given instead to Terri Johnson, the other coordinator who had 17 fewer years of experience than Dr. Miles.

31.    Dr. Miles was left with no functioning printer and scanner in her office for over a year while other employees in her same job position received brand new printers/scanners, despite some of them having existing machines that already worked better and were newer than the nonfunctional one in Dr. Miles's office.

32.    Dr. Maddox knew since at least January 2022 that the printer/scanner in Dr. Miles's office was no longer working, and yet Dr. Miles still did not have a functioning printer as of May 2023.

33.    In March 2023, Terri Dunn, the Southern Regional Director with the Alabama College System visited Dr. Miles's office for a monitor visit. During their conversation, Dr. Miles told Dr. Dunn about the retaliation and other concerns that

Dr. Miles had regarding her department and Dr. Maddox. Dr. Dunn referred Dr. Miles to Northern Regional Director Dana Wolfe, to whom Dr. Miles related the same concerns.

34.    Around this time, Dr. Maddox allowed Terri Johnson to participate in a Ready to Walk state curriculum training and re-write without informing Dr. Miles that the training was occurring, despite the fact that Dr. Miles had been BSCC's Ready to Work manager for 15 years and Terri Johnson had barely taught the curriculum.

35.    In May 2023, Dr. Maddox rescinded a week of planned scheduled off-days for Dr. Miles and the other two employees on her pay grade two-and-a-half business days before the off-days were supposed to begin, off-days that had been scheduled since September of 2022.

36.    Dr. Miles had numerous doctor's appointments scheduled for these unexpected work days.

37.    Dr. Miles requested to make up for the leave she would need to take to make it to those doctor's appointments by working during one of the scheduled off-days in June, but Dr. Maddox denied this request.

38.    Terri Johnson's requested schedule changes and accommodations, on the other hand, were immediately approved.

39.    On May 18, 2023, after Dr. Miles went to HR regarding some of the harassment and unequal treatment she was suffering form at the hands of Dr. Maddox, Dr. Maddox falsely complained to HR that Dr. Miles was frequently late.

40.    On June 8, 2023, during the GED graduation ceremony, Dr. Maddox surprised Dr. Miles by calling her up on stage to read a paragraph from the podium. Everyone else in Dr. Miles's department was told beforehand if they had a speaking role during the graduation and they were allowed to sit on stage, meanwhile Dr. Miles was not given a seat of importance during the ceremony and was called up to speak in a way that was intentionally calculated to make Dr. Miles look unprepared.

41.    Dr. Maddox sent Dr. Miles a negative performance review on June 26, 2023 at 3:00 P.M., after Dr. Miles's workday was over, and requested that Dr. Miles have it signed and returned by June 28. Dr. Miles was already scheduled to be off work for the rest of the week. Dr. Maddox later used this against Dr. Miles, falsely accusing her of not working a work day.

42.    Most of all of the criticisms contained in the review, which rated Dr. Miles a "1" meaning "Needs Improvement" in many areas, were based directly on Dr. Miles having elevated her complaint and concern regarding age discrimination to BSCC.

43.    Specifically, the review described Dr. Miles as follows:

a.      Regarding Time Management: "on occasion is not accessible…occasionally not [] in her office during scheduled work hours;"

b.      Regarding Conflict Resolution: "does not appropriately resolve conflict in the workplace; or [] allows conflict to reach an unprofessional level at times; or [] at times causes or contributes to conflict in the workplace…reached out to the System Office regarding a local matter; [] did not agree with the response she received form the Director and decided to forego following protocol and contacted the Southern Region Adult Education Director regarding Issues at Bevill State…contacted the System Office numerous times asking for them to overturn a decision made locally by the Adult Education Director;"

c.      Regarding Adaptability: "has trouble adapting to new projects, processes, procedures, or other procedures and/or changes;"

d.      Regarding Constructive Feedback: "sometimes has difficulty accepting constructive feedback and sometimes does not demonstrate a willingness to improve;"

e.      Regarding Teamwork: "at times does not contribute to the team;"

f.      Regarding Communication: "at times does not disseminate communication appropriately. [] reaches out to entities outside of Adult Education and, sometimes, even the College, for resolution to local issues;"

g.      Regarding Judgment: "at times does not show good judgment. [] has reached out to [the system office] on multiple occasions to circumvent the decision by the AE Director at Bevill;"

h.      Regarding Active Participation: "does not satisfactorily meet expectations in participation at Professional Development or college-wide offerings, department meetings, committee assignments, extracurricular activities or non-mandatory college events…attends some events, but does not actively participate nor contribute;"

i.      Regarding Respect: "at times does not show appropriate respect to supervisors or administrators."

44.     The criticisms of Dr. Miles made in the review were false, lacked context, and were thinly veiled responses to Dr. Miles having raised her valid concerns.

45.     Dr. Miles contacted Dr. Dunn, who told her that Dr. Maddox and Dean Al Moore had threatened Dr. Dunn with some form of retaliation for having discussed Dr. Miles's concerns with her.

46.    Prior to the negative review, Dr. Miles had never been directly told by Dr. Maddox that her work performance needed to improve. Dr. Maddox had never told Dr. Miles that her team participation was lacking.

47.    Around this time, Dr. Miles began seeing a mental health therapist due to the harassment and retaliation being inflicted on her by Dr. Maddox.

48.    Dr. Miles's job duties were increased significantly around this time, without a corresponding increase in pay.

49.    BSCC HR sent Dr. Miles an email asking if she wanted to stay on the D3 salary schedule or move to salary schedule E. Dr. Miles replied, emailing BSCC HR, Dean Moore, and Dr. Maddox to inquire about what her workload would entail under the different schedules, but did not receive a response. Her workload was later increased regardless, but her salary was not correspondingly increased. The only increase she received at this point was the same pay raise that all teachers received.

50.    Dr. Maddox did not give Dr. Miles the opportunity to train new instructors, or to provide professional development to other employees, despite Dr. Miles having 15 years of prior experience within the department of doing both. Dr. Maddox also did not give Dr. Miles the option to enter the Integrated Education and Training program.

51.    Due to the lawsuit against BSCC and Dr. Maddox filed by the former coordinator for Walker County, it was necessary to distribute the Walker County students between Dr. Miles and Terri Johnson, the other coordinator. Dr. Maddox assigned Dr. Miles significantly more classes, coverage area, and students than she assigned to Terri Johnson.

52.    Dr. Maddox has consistently shown favoritism toward Terri Johnson due to their shared relative lack of experience in their roles as compared with Dr. Miles.

53.    By assigning Terri Johnson a lesser service area, Dr. Maddox gave her time to take lunch off and eat with Dr. Maddox, discussing work-related matters and hindering Dr. Miles's ability to stay current regarding departmental updates.

54.    Terri Johnson was allowed to serve on a hiring committee that interviewed Angie Bray, who had been named in the Walker County Coordinator's lawsuit as being paid under the table by Dr. Maddox. Given the close friendship between Dr. Maddox and Terri Johnson, this represented a clear conflict of interest.

55.    Dr. Maddox and Terri Johnson were involved in changing students' grades in the Adult Education database to get certain teachers in trouble. This included Terri Johnson improperly entering that one of Dr. Miles students had completed the Mobilizing Alabama Pathways training program.

56.    Dr. Maddox denied Dr. Miles the opportunity to teach night class and be off on Friday, despite having previously allowed and continuing to allow Terri Johnson to do so on at least several occasions.

57.    Another departmental employee was improperly questioned by Dr. Maddox about whether she had talked to the Walker County coordinator about her lawsuit, further illustrating the toxic dynamic within the department fostered by Dr. Maddox.

58.    The exclusion and retaliation against Dr. Miles continued, despite her repeatedly reporting it to HR.

59.    Many other good teachers at BSCC quit or were forced out due to the harsh, tense, abusive environment within the department fostered by Dr. Maddox.

60.    On at least two occasions, Dr. Maddox traveled to the Pickens County campus, which was in Dr. Miles's territory, to meet with the instructor there, helping to train her and go through files. These duties would normally belong to Dr. Miles. Dr. Maddox did not even inform Dr. Miles that she was going to be icing her out of her own job, going as far as to hide her own location from her own secretary. Dr. Maddox did not inform Dr. Miles of what was addressed during those meetings and trainings, and yet still used reports from the Pickens County campus to inform evaluations of Dr. Miles.

61.    Dr. Miles was consistently left out of work-related communication and instruction that Dr. Maddox had with Terri Johnson, putting Dr. Miles at a disadvantage relative to Terri Johnson regarding job performance.

62.    Even still, teachers under Terri Johnson reported numerous complaints, while Dr. Miles never had one in twenty years.

63.    Terri Johnson continued to be allowed to not work on Fridays, even after having bullied a night class teacher into quitting. Despite Dr. Miles reporting the bullying to HR, Terri Johnson was not disciplined. Terri Johnson was also allowed to train new teachers and help with night classes while Dr. Miles was not given these opportunities, despite Dr. Miles being the tenured employee with an accredited doctorate and 17 more years experience in training teachers.

64.    The responsibility of keeping up with WorkKeys certificates was taken away from Dr. Miles and given to Terri Johnson.

65.    Dr. Miles again reported an update to the EEOC on June 10, 2024, informing the EEOC that she was being denied reasonable accommodations requested for a disability and that neither HR nor Dr. Maddox was informing her whether her requested FMLA leave was approved. Dr. Miles presented a doctor's letter to BSCC stating that she needed FMLA leave due to anxiety caused by the poor and unprofessional treatment she had received from Dr. Maddox, but her FMLA leave was still initially denied by Dr. Maddox.

66.     On one occasion, Dr. Miles informed everyone at a meeting, including Dr. Maddox, that her phone and email were not working due to an AT&T outage. Nevertheless, Dr. Maddox replied during that meeting to an email that Dr. Miles had sent regarding taking leave after the meeting rather than telling Dr. Miles directly that she could take that leave. Dr. Maddox refused to talk to or even look at Dr. Miles during that entire meeting.

67.     Dr. Maddox has been reported by numerous employees for disruptive conduct; abusive or threatening communications; physical or verbal abuse; fraud, dishonesty, or falsification of records; and failure to perform duties in a satisfactory manner. Nevertheless, Dr. Maddox has not been reprimanded, suspended, or even thoroughly investigated by BSCC regarding any of the above.

68.     Dr. Maddox has on one if not several occasions spoken poorly about older teachers above the age of 40 in staff meetings, saying that "they need to go."

69.     The exclusion and harassment of Dr. Miles by Dr. Maddox always seems to get worse right after Dr. Miles makes a complaint to HR.

70.     A BSCC HR employee displayed Dr. Miles's name and the EEOC on her workspace desktop while her screen was shared during a college-wide zoom meeting, allowing all staff to speculate whether Dr. Miles had filed an EEOC complaint against BSCC.

71.    Only in the last two weeks has Dr. Maddox finally allowed Dr. Miles to once again start working a night class and be off on Fridays, after years of Dr. Miles asking for this same allowance that Terri Johnson receives and being told no.

## Count I
## 29 U.S.C. § 623(a)
## – Failure to Promote
(AGAINST DEFENDANT BSCC)

72. Plaintiff re-alleges and incorporates by reference paragraphs 1-71 of the Complaint.

73. Plaintiff is a woman who at all times relevant to this action was over the age of 40 years old.

74. Plaintiff was qualified to be promoted to the position of Director of Adult Education in April 2021, a position to which she applied.

75. Dr. Maddox was not qualified to be promoted to the position of Director of Adult Education in April 2021, under the standards set out by BSCC for the position.

76. Dr. Maddox was hired for the position and Plaintiff was not.

77. Dr. Maddox was hired for the position because she was younger than Dr. Miles.

WHEREFORE, Plaintiff demands judgment for compensatory and liquidated damages under the ADEA, in an amount to be determined, for some or

all of the illegal discriminatory acts as heretofore described above. Plaintiff alleges that because of the above she suffered anxiety, humiliation, shame, and mental distress.

## Count II
## 29 U.S.C. § 623(a)
### Hostile Environment

(AGAINST DEFENDANT BSCC)

78.    Plaintiff re-alleges and incorporates by reference paragraphs 1-71 of the Complaint.

79.    Plaintiff was subject to continued harassment and discrimination as described above in their employment with BSCC, causing interference with Plaintiff's right to a work environment free from age discrimination under the ADEA.

80.    Plaintiff was subject to age-based harassment and discrimination as described above at BSCC, causing interference with her rights under the ADEA.

81.    The actions of Defendants harassing and discriminating against Plaintiff was taken intentionally and because of Plaintiff's age.

82.    The aforementioned harassment by Defendants became so significant and constant as to render Plaintiff's work environment on the job hostile and abusive.

83.     As is predicable when someone is confronted with a constant stream of toxic ageist abuse, this harassment caused Plaintiff significant mental and emotional damage.

WHEREFORE, Plaintiff demands judgment for compensatory and liquidated damages under the ADEA, in an amount to be determined, for some or all of the illegal acts as heretofore described above. Plaintiff alleges that because of the above each suffered anxiety, humiliation, shame, and mental distress.

## Count III
## 29 U.S.C. § 623(d)
## Retaliation
(AGAINST DEFENDANT BSCC)

84.     Plaintiff re-alleges and incorporates by reference paragraphs 1-71 of the Complaint.

85.     Plaintiff engaged in protected activity by complaining first of the failure to promote her to the Director of Adult Education position, and then of the general harassment and discrimination that ensued after her complaint..

86.     Defendant subjected Plaintiff to a pattern of further and heightened harassment after and because of Plaintiff's complaints.

WHEREFORE, Plaintiff demands judgment for compensatory and liquidated damages under the ADEA, in an amount to be determined, for some or all of the illegal acts as heretofore described above. Plaintiff alleges that because

of the above each suffered anxiety, humiliation, shame, and mental distress.

## Count IV

## 42 U.S.C. § 1983

## Equal Protection Violation

(ALL DEFENDANTS)

87.    Plaintiff re-alleges and incorporates by reference paragraphs 1-71 of the Complaint.

88.    Plaintiff is a woman over the age of 40.

89.    Plaintiff has been treated worse by Defendants than similarly situated individuals.

90.    Specifically, Plaintiff was passed over for a promotion in favor of a younger, less qualified individual.

WHEREFORE, Plaintiff demands judgment for compensatory and punitive damages under Section 1983, in an amount to be determined, for some or all of the unconstitutional acts as heretofore described above. Plaintiff alleges that because of the above each suffered humiliation and shame and mental distress.

## Count V

## Breach of Contract

(AGAINST DEFENDANT BSCC)

91.    Plaintiff re-alleges and incorporates by reference paragraphs 1-71 of the Complaint.

92.     The Plaintiff and Defendant Bevill State Community College entered into a contract for employment.

93.     Plaintiff has performed all of her obligations under the contract.

94.     The Defendants have breached various provisions of the contract with Plaintiff as set forth herein.

95.     The breaches by the Defendant have caused the Plaintiff to suffer damages.

WHEREFORE, the Plaintiff's demand judgment against the Defendant for compensatory damages for breach of contract in an amount to be determined by a struck jury plus interest, attorneys' fees and costs. Plaintiffs allege that because of the above allegations herein, she suffered anxiety, humiliation, shame, and mental distress.

## Count VII

## Intentional Infliction of Emotional Distress (IIED)

(Defendant Dr. Stephanie Maddox)

96.     Plaintiff re-alleges and incorporates by reference paragraphs 1-71 of the Complaint.

97.     Defendant Dr. Maddox intentionally inflicted emotional distress upon Plaintiff or should have known that emotional stress would likely occur as a result of its actions.

98.     The conduct set out in this Complaint committed by the Defendant was extreme and outrageous in nature.

99.     Because of the extreme and outrageous conduct and actions of the Defendant, Plaintiff has suffered emotional stress and will continue to do so.

100.    The emotional stress suffered by Plaintiff at the hands of the Defendant is severe in nature.

101.    As a direct and proximate consequence of the Defendant's intentional behavior, the Plaintiff has been injured and damaged as follows:

a.      she was caused to suffer direct and continuing financial losses, including, but not limited to, lost salary, lost benefits, lost retirement proceeds, and other financial opportunities;

b.      she has missed opportunities to meaningfully advance her career;

c.      she has suffered other financial damages, including attorneys' fees and costs;

d.      she has suffered and will continue to suffer embarrassment and humiliation;

e.      she has suffered and will continue to suffer mental anguish and emotional distress;

f.    she has suffered and will continue to suffer lost career opportunities;

g.    she has been otherwise injured and damaged.

WHEREFORE, as a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer lost wages, emotional distress, humiliation, damage to her professional reputation, compensatory damages and punitive damages in amounts to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, the premises considered, Plaintiff respectfully prays that the Court will grant the following relief at the conclusion of a trial by jury, and based on the jury's verdict:

1.    Declare that the conduct of the Defendant BSCC violated the ADEA and Section 1983:

2.    Permanently enjoin the BSCC, its agents, employees, successors, and those in active concert or participation with it, from discriminating against Plaintiff because of her age, race, or gender and from unlawful retaliation.

3.    Award compensatory damages to Plaintiff and against the BSCC under the ADEA and Section 1983 for the embarrassment, humiliation, ridicule, disparagement, and other mental anguish she has suffered; and

4.      Declare that the actions of Defendant Dr. Maddox violated 42 U.S. C. § 1983;

5.      Award compensatory damages to the Plaintiff and against Defendant Dr. Maddox and Defendant Bevill State Community College the amount fixed by the jury;

6.      Award liquidated and punitive damages against the Defendants for their conduct in knowing disregard of Plaintiff's federally protected rights, and

7.      Award to Plaintiff and against both the BSCC and Dr. Maddox a reasonable attorney's fee, pursuant to 42 U.S. C. § 1988.

8.      Plaintiff prays for such other, further, and different relief as may be appropriate in the circumstances.

## PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.

Respectfully submitted,


*/s/Richard A. Rice*
Richard A. Rice

*/s/ Spencer E. Bowley*
Spencer E. Bowley
THE RICE FIRM, LLC
N. 115 Richard Arrington Jr. Blvd.
Birmingham, AL 35203
Telephone 205 618-8733
rrice@rice-lawfirm.com
spencer@rice-lawfirm.com

ATTORNEYS FOR PLAINTIFF

## **REQUEST FOR SERVICE BY CERTIFIED MAIL**

PLEASE SERVE THE DEFENDANTS AT THE ADDRESS BELOW BY

CERITIFIED MAIL

Bevill State Community College
1411 Indiana Avenue
Jasper, Alabama 35501
Attn: Legal Clerk/Office of the President


Stephanie Maddox
400 17th Avenue W
Jasper, AL 35501